NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0064n.06

No.  09-3473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MAHAMADOU (a/k/a MOHAMADOU) TOURAY, | ) ) ) |
| Petitioner, | ) ON PETITION FOR REVIEW FROM ) THE BOARD OF IMMIGRATION |
| v. | ) APPEALS ) |
| ERIC H. HOLDER, JR., Attorney General, | ) OPINION ) |
| Respondent. | ) ) ) |

Before:  **SILER, GILMAN, and GRIFFIN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**  Mahamadou Touray faces removal to Sierra

Leone, his home country.  He challenges the decisions of the Immigration Judge (IJ) and the Board

of Immigration Appeals (BIA) that denied him withholding of removal under the Immigration and

Nationality Act, 8 U.S.C. § 1231(b)(3)(A).  The crux of Touray's argument is that the IJ and the BIA

erred in concluding that he had failed to prove past persecution by rebel forces in Sierra Leone on

account of an imputed political opinion.  For the reasons set forth below, we **DENY** Touray's petition

for review.

## I.  BACKGROUND

On appeal, Touray does not raise as issues either the denial of his asylum application (based

on the IJ's finding that he had failed to file within one year of entering the United States) or his

request for protection under the Convention Against Torture.  He instead challenges the denial of his

withholding-of-removal claim. The facts set forth below are therefore limited to those relevant to that claim.

Touray is a native and citizen of Sierra Leone. He entered the United States on an undetermined date without proper documentation. In August 2000, he filed an asylum application. He sought asylum because his mother and father were killed in a rebel attack in Sierra Leone, and he believed that the only way he could "escape all this inhuman or cruel experience or death is to go away."

In May 2001, the Immigration and Naturalization Service (INS) charged that Touray was removable under 8 U.S.C. § 1227(a)(1)(A) as an alien not in possession of a valid entry document. Touray responded by filing a supplemental asylum application in August 2001 where, in relevant part, he expanded upon the details of the rebel attack on him and his family. At an initial hearing in October 2001, Touray admitted the factual allegations contained in the charges against him, conceded removability, and renewed his requests for asylum and other relief.

Touray was the only witness to testify at his merits hearing before the IJ in August 2007. He stated that he is from the Marakah clan, as is the majority of his native village. The Marakah clan supported the government in Sierra Leone's civil war, a fact well known in that country.

Although Touray testified to several details about the rebel attack on him and his family, he could not remember the name of the rebel group. The attack occurred in September 1999 at the Touray family's farm. While Touray and his father were out in the field, the rebels came on the farm property. When the rebels attempted to beat Touray, his father intervened. The rebels responded by

beating Touray's father with their gun butts until they killed him. But then the rebels "heard a noise somewhere" and ran away, allowing Touray to escape.

Touray ran to Sefadou, a neighboring village. There, he learned that his mother had also been killed in the attack. He later fled Sefadou when it too was attacked. Touray did not know the name of the group that attacked Sefadou, but he stated in his asylum application that the rebels were responsible. Eventually, he obtained passage to the United States and entered via a false passport.

The IJ found, in relevant part, that Touray was "basically credible with respect to his testimony on events in Sierra Leone." But the IJ found no nexus between the harm suffered by Touray and any ground protected under the immigration laws. The IJ instead concluded that Touray and his family were the unfortunate victims of random violence caused by the civil war in Sierra Leone. Touray was thus "not entitled to the rebuttable regulatory presumption of future persecution."

All of Touray's bases for relief were ultimately denied by the IJ, including withholding of removal under 8 U.S.C. § 1231(b)(3). The BIA affirmed after specifically adopting the reasoning of the IJ that Touray had failed to prove past persecution on account of a protected ground. This timely petition for review followed.

## II. ANALYSIS

Under 8 U.S.C. § 1231(b)(3)(A), "the government may not remove an alien to a country if he can prove that it is more likely than not that his 'life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'" *Haider v. Holder*, 595 F.3d 276, 283 (6th Cir. 2010) (quoting 8 U.S.C. § 1231(b)(3)(A)). If the alien can prove that he or she suffered past persecution in the country of origin on account of

one or more of the protected grounds listed above, then the alien benefits from a rebuttable presumption that his or her life or freedom would be threatened in the future if forced to return there. *Haider*, 595 F.3d at 283-84 (citing 8 C.F.R. § 1208.16(b)(1)(i)). We employ the same basic framework for evaluating an alien's eligibility for withholding of removal as we do for asylum, "but in the case of withholding, a higher probability of persecution is required." *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003).

Where, as here, the BIA adopts the IJ's decision and adds additional analysis, we review both the IJ's opinion and the BIA's additional analysis. *See Haider*, 595 F.3d at 281 (citation omitted). The IJ's and the BIA's factual findings are reviewed under the substantial-evidence standard, meaning that we may reverse only if the evidence compels a conclusion contrary to the decision below. *Id.*; *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010); *see also* 8 U.S.C. § 1252(b)(4)(B).

Touray argues that the IJ erred in finding that Touray did not establish past persecution on account of a protected ground. Specifically, he contends that he needed to provide only some evidence that he suffered persecution on account of a protected ground, and that he satisfied this standard by providing evidence that the rebels attacked him and his family because of "the political opinion that was imputed to him on account of his [membership in the] Marakah clan." The conclusion that he suffered persecution on account of a protected ground would in turn entitle him to the rebuttable presumption that he would suffer future persecution if removed to Sierra Leone. Touray argues that the BIA's decision should therefore be reversed and remanded so that the withholding-of-removal issue can be considered in light of this presumption. His entire argument on

appeal turns on the claim that the IJ erred in finding that he did not establish past persecution on account of a protected ground.

The fundamental flaw in Touray's argument is that he has failed to satisfy the legal standard of review required to reverse the BIA's decision. As noted above, Touray argues that the record contains some evidence that the rebels attacked him on account of a protected ground—namely, an imputed political opinion. True enough, this court has held that an imputed political opinion can provide a basis for relief. *Haider*, 595 F.3d at 284. And for Touray to establish persecution on account of a protected ground in the first instance, "he must provide *some . . .* direct or circumstantial" evidence that the motive for persecuting him was because of that protected ground. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (emphasis in original); *accord Marku v. Ashcroft*, 380 F.3d 982, 987 (6th Cir. 2004). But to reverse the decision below, providing *some* evidence is not sufficient. "Because [he] is asking this court to reverse the determination of the BIA, the evidence must be 'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Marku*, 380 F.3d at 987 (quoting *Elias-Zacarias*, 502 U.S. at 483-84); *accord Pablo-Sanchez*, 600 F.3d at 595.

But the record does not *compel* such a finding. Touray never testified that the attack on him and his family was because of their clan membership, political opinion, or imputed political opinion. Although Touray noted that the Marakah clan's support of the government rather than the rebels during the civil war was well known, he never linked this fact to the attack. Nor did he testify that the rebels targeted him for any specific reason.

Touray was similarly vague when he testified about why he feared returning to Sierra Leone. He said that he might be killed if he returned, but he simply referred to the dangers of fighting in general when asked to identify who might harm him: "There's work fights going on over there, so I don't trust myself being there."

The general tenor of his claim of future persecution is essentially the same as his claim of past persecution and is equally unsupported. The only mention he made of the rebels when discussing the dangers of returning was to note that if the rebels did not win the elections being held that month, then they would start fighting again. Although he testified that he would be in danger if the fighting resumed, his testimony could reasonably be interpreted as making the commonsense observation that a country embroiled in internal strife is less safe for everyone. Touray never stated that he feared the rebels in particular, or that either side would have a specific reason to target either him or a group of which he is a part.

One relevant point that Touray emphasized in his testimony is that he is not political. He testified that he had never voted in any election in Sierra Leone; that he is not a member of any political party or group; that he would not describe himself as a politically prominent individual in Sierra Leone; and that if he returned, he would not participate in politics.

The IJ found that Touray's testimony concerning the events in Sierra Leone was credible. This testimony indeed provides a modicum of evidence supporting the conclusion that Touray and his family were attacked because of an imputed political opinion; namely, that the Marakah clan supported the government during the civil war. But this testimony does not compel the conclusion that Touray was persecuted for that reason. The most persuasive conclusion based on the testimony

is exactly what the IJ found: that Touray and his family "were unfortunate, probably random, civilian victims of a bloody civil war" rather than the victims of persecution based on an imputed political opinion.

The record therefore does not compel a conclusion contrary to the IJ's finding that Touray failed to establish the crucial nexus prong (i.e., that his persecution was *on account of* a protected ground). This failure of proof undermines Touray's entire argument because his argument's premise is that the IJ erred in finding that Touray did not establish the nexus prong.

### III. CONCLUSION

For all of the reasons set forth above, we **DENY** Touray's petition for review.